**SO ORDERED.**

**SIGNED this 14th day of July, 2017.**



_____
Robert E. Nugent
United States Bankruptcy Judge
_____

DESIGNATED FOR ONLINE PUBLICATION

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| IN RE: | |
|---|---|
| NATHAN EDWARD HOLMAN<br>SHALA RENEE HOLMAN | Case No. 11-13418<br>Chapter 13 |
| **Debtors.** | |

### ORDER DENYING TRUSTEE'S MOTION FOR STAY PENDING APPEAL

The trustee moves for a stay pending his interlocutory appeal of the Court's order dated May 9, 2017, denying his motion and that of the United States to dismiss the debtors' case for cause under 11 U.S.C. § 1307(c).[1] A brief summary of that lengthy order is necessary to frame the issues in the Trustee's motion for a stay. The Court,

---

[1] Doc. 257, hereafter "May Order."

1

at length, analyzed the debtors' conduct throughout the case and found it wanting in many respects. But, many of the debtors' most troublesome activities occurred before the debtors and the trustee entered into an Agreed Order in December of 2015 resolving the trustee's objections to the debtors' motions to modify their plan.[2] Much of the conduct rightly criticized by the trustee at that time was revived as part of the most recently denied motion to dismiss, though some of the debtors' conduct subsequent to the Agreed Order is also problematic. In its May Order, the Court concluded that though the debtors' misconduct constituted cause (including lack of good faith) warranting a dismissal, by the time the case was tried in March of 2017, the debtors had completed all payments under the plan and, upon appropriate request, would be entitled to a discharge. The legal underpinning for this conclusion is this Court's view that while motions to dismiss under §1307(c) are matters for the court's discretion, courts are granted no such discretion by the mandatory language of §1328(a) which requires that when debtors have completed their payments under the plan and met the other requirements of that section, a discharge shall issue. To be sure, the May Order did not issue a discharge to debtors, but did state that when or if the debtors requested a discharge and met the other requirements of § 1328(a), a discharge would be granted. All the May Order did was deny the Trustee's and Government's motions to dismiss.

That being said, the Court believes that it retains jurisdiction to grant a discharge upon appropriate request and showing, notwithstanding the pendency of

---

[2] Doc. 180.

the interlocutory appeal of the May Order denying the motions to dismiss, unless a stay of these case-ending procedures is granted.[3] On May 22, 2017, following the entry of the May Order, debtors moved for entry of their discharge and certified that all payments under their chapter 13 plan have been completed.[4] On the same day (but after Debtors' discharge motion), the Trustee moved for leave to appeal the interlocutory May Order and moved for a stay pending appeal.[5] In both motions, the Trustee represented that Debtors made their final payment under their plan on December 15, 2016.[6] The Trustee seeks a stay of the "entry of the Debtors' discharge and closing of their case" pending the appeal of the May Order.[7]

At the July 12 hearing on this stay motion, the Trustee advised the court that the district court had granted that unopposed request to pursue the interlocutory appeal. Counsel for the Trustee again reaffirmed on the record that debtors completed all payments under the plan in December of 2016 and represented that the Trustee was holding no funds for distribution to creditors. The only work remaining in the case is determining whether debtors meet the remaining certification obligations

---

[3] *See In re Ahmed,* 420 B.R. 518 (Bankr. C.D. Cal. 2009, as amended Jan. 8, 2010) *(*court granted discharge while appeal of confirmation order was pending; while an appeal of a bankruptcy court order will typically divest that court of jurisdiction over those aspects of case involved in the appeal, the bankruptcy court has full jurisdiction to proceed on all other aspects of the bankruptcy case.); *Sherman v. SEC (In re Sherman)*, 491 F.3d 948 (9th Cir. 2007) (upholding bankruptcy court's entry of discharge order in chapter 7 case while appeal pending of an order denying motion to dismiss case).
[4] Doc. 265.
[5] Doc. 266 and 268.
[6] Doc. 266, ¶ 9; Doc. 268, ¶ 9.
[7] Doc. 268, p. 3.

3

referenced in 11 U.S.C. § 1328 to receive their discharge,[8] granting the discharge, the Trustee's completing the case-ending procedures (*i.e.* approval of Trustee's final account), and closing the case.

Stay Pending Appeal – Rule 8007

Fed. R. Bankr. P. 8007(a)(1)(A) requires the Trustee to first ask for a stay of the May Order here.[9] The bankruptcy court may, subject to the further order of the District Court (to which a motion for leave to appeal has been made), either suspend further activities in the case or issue any other appropriate orders to protect the rights of the parties.[10] In considering the Trustee's motion for stay pending appeal, I am required to consider four well known factors and to clearly state my reasoning in so doing. Those factors are (1) the movant's likelihood of success on appeal; (2) whether movant will suffer irreparable harm without a stay; (3) the absence of harm to debtors if the stay is granted; and (4) whether the public interest will be harmed.[11]

---

[8] Chapter 13 debtors are required to certify that they have completed an instructional course on personal financial management by an approved provider. *See* 11 U.S.C. § 1328(g); Fed. R. Bankr. P. 1007(b)(7). Debtors have done that. *See* Doc. 202 and 203. Debtors have also made the requisite certifications regarding no prior discharges (*See* § 1328(f)), their homestead exemption (*See* Rule 1007(b)(8); § 522(q)(1)), and inapplicability of § 522(q)(1) (*See* § 1328(h)). *See* Doc. 265. Debtors' certification regarding domestic support obligations (*See* § 1328(a)) as well as a current certification that they have completed payments under the plan, remain outstanding. Due to these latter certification deficiencies, the Court denied Debtors' motion for entry of discharge without prejudice on July 12. *See* Doc. 265 and 282.
[9] Fed. R. Bankr. P. 8007 (effective December 1, 2014) is derived from former Rule 8005. Case law prior to 2015 refers to Fed. R. Bankr. P. 8005. Substantively, much of the former rule is retained in Rule 8007 and the standard and factors to be considered in determining whether to grant the stay remain unchanged.
[10] Fed. R. Bankr. P. 8007(e).
[11] *Homans v. City of Albuquerque,* 264 F.3d 1240, 1243 (10th Cir. 2001).

4

If the three harm factors tip decidedly in favor of the movant, the likelihood of success factor is somewhat relaxed.[12] But the first two factors "are the most critical" and require more than a mere possibility.[13] If the movant fails to satisfy any one of the four factors the court acts within its discretion to deny the stay.[14] Whether to grant a stay rests in the sound discretion of the court and the Trustee, as movant, bears the burden of showing that a stay is justified.[15]

Likelihood of Success on Appeal

I first look to the likelihood of the Trustee's success on appeal. The showing required to establish this factor has been variously described. It is not enough that the likelihood of success on the merits is "better than negligible," or a mere "possibility."[16] The movant must show that it has a "substantial" or "strong" case on appeal.[17]

---

[12] *Fed. Trade Comm'n v. Mainstream Mktg. Services, Inc.,* 345 F.3d 850, 852 (10th Cir. 2003). *See In re Williamson,* 414 B.R. 892, 894 (Bankr. S.D. Ga. 2009) (movant's showing shifts from "probable" likelihood of success on appeal to "a substantial case" on the merits.)
[13] *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *Respect Maine PAC v. McKee,* 622 F.3d 13, 16 (1st Cir. 2010).
[14] *In re Efron,* 535 B.R. 516, 518 (Bankr. D. P.R. 2014); *In re Dakota Rail, Inc.,* 111 B.R. 818, 820 (Bankr. D. Minn. 1990).
[15] *Nken,* 556 U.S. 418, 433-34 (A stay is an intrusion into the ordinary processes of administration and judicial review and is not a matter of right, even if irreparable injury might otherwise result; it is instead an exercise of judicial discretion dependent upon the circumstances of the case); *Efron,* 535 B.R. 516, 518 (describing movant's burden as "heavy" one).
[16] *Nken,* 556 U.S. at 434; *In re Revel AC, Inc.,* 802 F.3d 558, 571 (3rd Cir. 2015) (a sufficient showing it can win on the merits is one that is "significantly better than negligible but not greater tha[n] 50%."); *In re Efron,* 535 B.R. 516, 518 (showing requires a "strong" likelihood of success on the merits); *In re Williamson,* 414 B.R. 892, 894 (debtor did not show "probable" likelihood of success on merits of appeal.
[17] *In re Access Cardiosystems, Inc.,* 340 B.R. 656, 660 (Bankr. D. Mass. 2006).

5

The Court's May Order denying the dismissal is one that should be reviewed for abuse of discretion, the most deferential standard of review.[18] Section 1307(c) explicitly grants the court that discretion by employing the word "may" and by providing a non-exclusive list of reasons why cases should or could be dismissed. In this case, the reasons to dismiss given by the trustee included "unreasonable delay" under §1307(c)(1), "material default" with respect to a confirmed plan under §1307(c)(6), and lack of good faith.

After hearing all of the evidence, I concluded that while the debtors had engaged in unreasonable delay activities before December of 2015, those issues had previously been resolved in the December 2015 Agreed Order. After that time, the debtors defaulted on one plan payment, triggering the instant motion to dismiss, but they cured that default, completing their 60-month plan in about 61 months. Likewise, while they failed to comply with various non-monetary plan provisions and thereby violated the court's confirmation order, many of those violations occurred before the December 2015 Agreed Order resolved them. While the debtors' formation of an LLC to hold Mrs. Holman's business and signing a lease on an apartment in Kansas City without securing the trustee's or the court's permission also violated the confirmation order and evinced bad faith, and while they remained delinquent on post-petition tax filing and payment obligations, they completed their plan payments

---

[18] *In re Klaas,* 858 F.3d 820, 829 (3rd Cir. 2017). *See also In re Brumlik,* 132 B.R. 495, 498 (M.D. Ga. 1991) (debtors stood practically no chance of reversing change of venue ruling where court could overrule only upon showing of a clear abuse of discretion.)

6

by the end of 2016—a fact the Trustee conceded in several pretrial conferences and at the hearing in this case.

Faced with that reality and the debtors' right to the entry of a discharge if they asked for one, I concluded that exercising my discretion to dismiss their case after they had paid $109,107 to their creditors and deny them the discharge to which § 1328(a) unequivocally entitles them would effect a penalty that the Bankruptcy Code simply does not contemplate. As such, I doubt that a reviewing court will "be left with a definite and firm conviction" that this Court committed "a clear error of judgment" or "exceeded the bounds of permissible choice" in reaching this conclusion.[19]

The Trustee cites the lack of any controlling Tenth Circuit authority and what he characterizes as a dearth of case law "reconciling" a pending § 1307(c) dismissal for cause and the § 1328(a) entry of discharge upon completion of plan payments. Neither that, nor the Trustee's claimed importance of this issue in chapter 13 bankruptcy practice, demonstrates that the Trustee is likely to prevail on the merits of his appeal. The Court cited case law virtually on point with the facts of this case.[20]

---

[19] *See Moothart v. Bell,* 21 F.3d 1449, 1504 (10th Cir. 1994).
[20] *In re Parffrey,* 264 B.R. 409, 414 (Bankr. S.D. Tex. 2001). *See also, In re Fridley,* No. 06-40424, 2007 WL 2848383 at *2 (Bankr. W.D. Wash. July 2, 2007) (agreeing with *Parffrey* that § 1328(a) is mandatory and provides no discretion to the bankruptcy court to withhold the discharge after completion of all payments under the plan; modification of a plan under § 1329(a) is precluded after all payments have been made, but concluding that the applicable commitment period is temporal precluding an early payoff unless a modification permitting such is confirmed); *In re Klaas,* 858 F.3d 820 (3rd Cir. 2017) (court did not abuse its discretion in denying creditors' motion to dismiss and allowing debtors a brief grace period for curative payment after 60-month plan term to complete all payments under debtors' plan and granting debtors a discharge).

7

Case 11-13418    Doc# 283    Filed 07/14/17    Page 7 of 12

And ultimately, the Court did what courts do – it applied the clear and plain language of the applicable statutes to the facts at hand. Under § 1307(c) a case "may" be dismissed for cause; it is permissive. Under § 1328(a) the court "shall" grant the debtors a discharge "as soon as practicable" after completion by the debtor of all payments under the plan; it is mandatory.[21] Neither statute is ambiguous and leaves the court no room to craft an outcome outside § 1328(a)'s mandate once payments under the plan were completed.[22] The Trustee has not demonstrated how or why the court abused its discretion in denying the motion to dismiss and therefore has not shown a "likelihood of success" on appeal in this case. Even though this conclusion would normally end the Court's stay analysis, I consider the other factors in the interest of a full and complete record.[23]

<u>Whether the Trustee will Suffer Irreparable Harm Without a Stay</u>

The second factor is the presence or absence of irreparable harm to the Trustee. The Trustee argues, with some justification, that if the court enters a discharge in

---

[21] *See Klaas,* 858 F.3d at 829-30 (comparing permissive language of § 1307(c) with mandatory language of § 1328(a) and noting the text is unambiguous).
[22] *See In re Mills,* 539 B.R. 879 (Bankr. D. Kan. 2015) (concluding that debtor's voluntary motion to dismiss under § 1307(b) trumps creditors' motion to convert for cause under § 1307(c); § 1307(b) requires the court to grant dismissal "at any time;" § 1307(c) is discretionary).
[23] *See In re Revel AC, Inc.,* 802 F.3d 558, 570-71 (3rd Cir. 2015) (in the absence of showing more than a negligible likelihood of success on appeal the court need not evaluate the other factors and should deny the stay); *In re Efron,* 535 B.R. 516, 518 (court does not abuse its discretion in denying stay if movant fails to establish any one factor); *In re Quade,* 496 B.R. 520 (Bankr. N.D. Ill. 2013) (as a threshold matter, movant must show some likelihood of success on the merits or no further inquiry is merited); *In re Access Cardiosystems, Inc.,* 340 B.R. 656, 659-60 (Bankr. D. Mass. 2006) (stay should not be granted where any of the four factors is entirely absent).

8

this case, the appealed order will be moot.[24] While mootness is harmful to the Trustee, it alone cannot be the basis for staying the winding up of this case.[25]

And, the May Order is not a discharge—it is simply this court's conclusion that the debtors' absolute right to a discharge under the statute trumped the court's discretion to dismiss their case. Indeed, if I stay all proceedings in this case, the debtors will be unable to negotiate an installment agreement with the IRS to resolve their nondischargeable back taxes and interest on them will continue to run. The case will simply "float" on the docket unclosed, even though the creditors have received all that the plan contemplated them receiving. The entry of a discharge is a largely automatic act once the debtors certify their completion of payments, compliance with any domestic support orders, and that they are not the subject of a proceeding described in 11 U.S.C. § 522(q). The time to raise any other objection to the dischargeability of any or all of the debtors' debts has long passed.[26] This factor weighs against the Trustee.

<u>Whether Debtors Will be Substantially Harmed if Stay is Granted</u>

---

[24] *In re Forbes,* 218 B.R. 48, 52 (8th Cir. BAP 1998).
[25] *See e.g., In re Sunflower Racing, Inc.,* 223 B.R. 222, 225 (Bankr. D. Kan. 1998) (the fact that an appeal may be rendered moot without a stay does not itself constitute irreparable harm); *Ohanian v. Irwin (In re Irwin)*, 338 B.R. 839, 853 (E.D. Cal. 2006) (An appeal being rendered moot does not itself constitute irreparable harm); *In re Red Mountain Mach. Co.*, 451 B.R. 897, 908–09 (Bankr. D. Ariz. 2011) (irreparable injury cannot be shown solely from the possibility that an appeal may be moot); *In re Convenience USA, Inc.,* 290 B.R. 558, 563 (Bankr. M.D.N.C. 2003) (majority of the cases have found that the risk that an appeal may become moot does not, standing alone, constitute irreparable injury).
[26] *See* Fed. R. Bankr. P. 4007.

9

The third factor is whether the harm to the debtors of granting a stay outweighs the harm to the Trustee of not granting one. Stopping the music in this case effectively sentences the debtors to an indefinite term in limbo: they have no more payments to make, but they remain at risk of not receiving their discharge, meaning that even though they have paid what they were ordered to pay, they would continue to owe all of their prepetition debts. That effectively denies them the fresh start that chapter 13 is designed to provide. The Trustee has withheld his customary certification of completion of plan payments for nearly seven months while admitting at trial, in exhibits, and in filed papers that payments were completed in December of 2016. Rather than completing their payments in 61 months and receiving a discharge in January of 2017, they would remain in suspended animation for an undetermined period of time while the appeal goes forward. This effectively denies the debtors a fresh start, keeps them from entering into an installment agreement with the IRS to pay their nondischargeable tax debts which exposes them to continuing interest and penalties, and hamstrings their efforts to go forward with their businesses and their lives. Let me be clear. The debtors have paid exactly what they agreed to pay when their plan was modified by a final, agreed order in December of 2015. Nothing in the Bankruptcy Code requires that they pay more. They did what they said they would do and, just as important, they did what the Trustee agreed to allow them to do. This factor weighs against the Trustee, too.

<u>Public Interest</u>

Finally, I consider the fourth stay factor, the public interest. In the context of a bankruptcy case, public interest means promoting a successful reorganization and maximizing debtors' estate in an orderly and efficient manner.[27] Here, the public interest is best served by judges doing their jobs—finding facts based upon evidence fairly presented, applying the law to those facts, and sending the parties on their way. Finality is one of the core "values" of bankruptcy. Moreover, the public interest is served by this court's upholding the law that affords these debtors a fresh start even in the face of their less than salutary conduct during the case.[28] This case has been fully administered and the debtors have made all their payments. The provisions of the Bankruptcy Code require that the case proceed to its conclusion: discharge and closing. This factor favors the Debtors.

Conclusion

The facts, not the law, made this a difficult case. The Trustee litigated it through evidentiary hearing . . . twice, once in October of 2015 and again in March of 2017. Timing matters, too. Had the Trustee not acquiesced in the debtors' plan

---

[27] *See In re Scrub Island Development Group Limited,* 523 B.R. 862, 879 (Bankr. M.D. Fla. 2015) (granting a stay would prevent debtors from implementing their confirmed plan and is contrary to public policy); *In re Fullmer,* 323 B.R. 287 (Bankr. D. Nev. 2005) (achievement of reorganization is a public interest worthy of protection in the bankruptcy context); *In re Richmond Metal Finishers, Inc.,* 34 B.R. 270 (Bankr. E.D. Va. 1984) (granting stay would prevent debtor from disposing of principal asset and frustrate purposes and policies of the Bankruptcy Code to help reorganize debtors and provide a fresh start).

[28] *See Stellwagen v. Clum,* 245 U.S. 605, 617 (1918) (It is in the public interest for the efficient administration of the bankruptcy system, which includes administering debtor's property for the benefit of creditors and giving the debtor a fresh start). The public interest is best served when the Bankruptcy Rules and Code are adhered to strictly. *In re Taylor,* 196 B.R. 197, 201 (Bankr. M.D. Fla. 1996).

modification in December of 2015, the Court might well have dismissed the case after the first trial. Had the Trustee not moved to continue the November 15, 2016 evidentiary hearing on the second motion to dismiss that is the subject of this appeal, the motion could have been tried before the debtors completed their payments and he might have received the same result.[29] But as it is, the debtors completed their chapter 13 plan as modified and agreed to by the Trustee before the motion finally came to trial. In the absence of a showing that the Trustee would likely succeed in demonstrating the Court abused its discretion in denying the motion to dismiss or favors any of the four stay factors, the bankruptcy case should now be closed after appropriate "case-ending" procedures. The Trustee's motion for a stay pending appeal is therefore denied.

### 

---

[29] *See* Doc. 220.